**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

MARIO ALBERTO SANCHEZ SANDOVAL,

Petitioner,

v.

TODD BLANCHE, *et al.*,

Respondents.

Case No. 2:26-cv-01387-RFB-NJK

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Mario Alberto Sanchez Sandoval's Petition for Writ of Habeas Corpus, which he filed pursuant to 28 U.S.C. § 2241. See generally Am. Pet. for Writ of Habeas Corpus, ECF No. 10 [hereinafter, "Petition"]. Through it, he challenges the lawfulness of his ongoing detention at the Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Respondents are subjecting Mr. Sanchez Sandoval to mandatory detention based on 8 U.S.C. § 1225(b)(2)(A). See Resp'ts' Resp. to Pet'r's Verified Am. Pet. for Habeas Corpus 2, ECF No. 13 [hereinafter, "Opposition"]. In turn, Mr. Sanchez Sandoval argues that he is a member of the Jacobo Ramirez Class, such that his ongoing detention violates: (i.) the Immigration and Nationality Act ("INA") and (ii.) this Court's partial summary judgment in favor of the class. See generally Jacobo Ramirez v. Noem,[1] --- F. Supp. 3d ---, No. 2:25-cv-02136-RFB-MDC, 2026 WL 310090 (D. Nev. Feb. 5, 2026) (certifying a class of noncitizens who are asserting statutory, regulatory, and constitutional challenges to the government's unprecedented mandatory detention policies) [hereinafter, "Jacobo Ramirez I"]; see also generally Jacobo Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799 (D.

[1] Kristi Noem has since been substituted for Respondent Markwayne Mullin, the current Secretary of the Department of Homeland Security, pursuant to the Federal Rules of Civil Procedure. See FED. R. CIV. P. 25(d).

Nev. Mar. 30, 2026) (granting partial summary judgment in favor of the class) [hereinafter, "Jacobo Ramirez II"]. Thus, Mr. Sanchez Sandoval reasons that he should be immediately released from government custody. See generally Petition at 5.

Meanwhile, Respondents, once again, invoke their novel statutory interpretation of § 1225(b)(2)(A) to justify Petitioner's detention. See generally Opposition. This Court is well acquainted with Respondents' re-imagination of the INA; after all, the Court has repeatedly rejected it because it deforms the statute. See, e.g., Jacobo Ramirez II, 2026 WL 879799, at *34–35 (collecting cases). In fact, the Court recently granted relief on this precise issue in a related class-action, which is inextricably intertwined with this case. Specifically, the Court: (i.) declared that Respondents' interpretation is wrong; (ii.) declared that members of the Jacobo Ramirez Class are entitled to robust procedural protections under 8 U.S.C. § 1226(a); and (iii.) vacated Respondents' related policies—namely, the Board of Immigration Appeals' decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). See Jacobo Ramirez II, 2026 WL 879799, at *33–34. As discussed below, the Court finds that Petitioner is a member of the Jacobo Ramirez Class; therefore, his ongoing detention is unlawful under the INA and its implementing regulations. Furthermore, the Court concludes that Petitioner must be immediately released from government custody, as his detention has been unlawful from the very moment it began. Thus, the Court grants Petitioner a writ of habeas corpus and orders Respondents to immediately release him.

## I.   CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo Ramirez Class. This certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. at *4 (citation omitted). Based on the Parties' undisputed factual allegations, and the evidence

they supply, the Court finds that Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings). First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See R. of Inadmissibility/Deportability 2, ECF No. 7-1 [hereinafter, "I-213"]; Petition at 1–2. Second, he is in removal proceedings before the Las Vegas Immigration Court, which sits in the United States District of Nevada. See Notice to Appear 1, ECF No. 7-1 [hereinafter, "NTA"]; Notice of In-Person Hearing 1, ECF No. 7-1; Order of the Immgr. Judge 1, ECF No. 7-1 [hereinafter, "Bond Order"]. Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See NTA at 1 & 4; I-213 at 3. Fourth, Respondents are detaining him pursuant to § 1225(b)(2)(A); in other words, the government is not asserting that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See Opposition at 2; Petition at 4. Fifth, Petitioner was detained well within our country's interior, long after he entered the United States. See I-213 at 2 (stating that Petition was detained by ICE on September 15, 2026, in Henderson, Nevada); Petition at 3 (clarifying that Petitioner entered the United States over twenty-five years ago). In sum, Petitioner clearly falls within the Jacobo Ramirez Class, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief.").

The Court rejects Respondents' argument that Petitioner is not a member of the class. Respondents argue that Petitioner falls outside of the Jacobo Ramirez Class "because he was detained on September 15, 2025, which is prior to the Jacobo Ramirez class action being filed on October 30, 2025." Opposition at 1. Respondents' argument lacks merit. The Jacobo Ramirez Class includes all noncitizens "who *are* . . . detained by ICE." Jacobo Ramirez I, 2026 WL 310090, at *24 (emphasis added). The class definition does not categorically exclude people who were arrested before October 30, 2025. This makes sense, as Respondents have been systematically misclassifying noncitizens, and subjecting them to mandatory detention, since July of 2025. See Jacobo Ramirez II, 2026 WL 879799, at *9 (citation omitted). Thus, Petitioner became a member of the class upon its certification and his satisfying the class definition criteria Ultimately, Respondents fail to explain, or offer any legal authority, as to why Mr. Sanchez Sandoval's

detention date places him beyond the Jacobo Ramirez Class. They offer no reasoning on this point. See generally Opposition. They do not cite any authorities to support their position. See generally id. And they fail to meaningfully engage with the class definition. See generally id. The Court declines to exclude Mr. Sanchez Sandoval from the Jacobo Ramirez Class merely because Respondents assert that he does not belong to it.

Therefore, the Court finds that Mr. Sanchez Sandoval is a member of the Jacobo Ramirez Class. As such, his ongoing detention is unlawful, as the government is improperly subjecting him to mandatory detention pursuant to § 1225(b)(2)(A), even though he is entitled to robust procedural protections which guard against indiscriminate incarceration. See Jacobo Ramirez, 2026 WL 879799, at *33–34.

## II.    REMEDY

Having found that Petitioner's ongoing detention is unlawful, the Court turns to the proper remedy. Before fashioning a remedy for this specific case, the Court outlines some general principles which govern habeas corpus proceedings. Federal courts have equitable discretion to fashion habeas relief as "law and justice require." Brown v. Davenport, 596 U.S. 118, 132 (2022) (quoting 28 U.S.C. § 2243). Indeed, this Court's remedial power is "broad and flexible" when it sits in habeas. See U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (citation omitted); Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief. . . . The court is free to fashion the remedy as law and justice require . . . .") (citation omitted). Nonetheless, since "[h]abeas is at its core a remedy for unlawful executive detention," "[t]he typical remedy for such detention is, of course, release." Munaf v. Geren, 553 U.S. 674, 693 (2008) (citations omitted). Since Mr. Sanchez Sandoval's detention is void *ab initio*, the Court finds that the typical remedy is the appropriate one in this case.

Petitioner's detention has been unlawful from the very moment it began. Specifically, Respondents have deprived him of significant procedural protections under the INA. As found here, Mr. Sanchez Sandoval is properly subject to 8 U.S.C. § 1226(a), which mandates a series of procedural protections vis-à-vis its implementing regulations. See Rodriguez Diaz v. Garland, 53

F.4th 1189, 1196–97 (9th Cir. 2022). Relevant here, ICE must obtain a warrant, make an initial custody determination, and offer a meaningful bond hearing to detain a noncitizen under 8 U.S.C. § 1226(a). Beginning with the warrant requirement, ICE must generally obtain an administrative warrant (*i.e.*, a Form I-200) to arrest a noncitizen under § 1226(a). See Djiwaje v. Bondi, No. 2:26-cv-00344-RFB-MDC, 2026 WL 926753, at *2 (D. Nev. Apr. 6, 2026) (citing 8 C.F.R. § 236.1(b)(1)); see also 8 U.S.C. § 1226(a) ("On a warrant issued by the Attorney General, [a noncitizen] may be arrested . . . .").[2] Even when they do, a noncitizen is entitled to an individualized, initial custody determination at the outset of detention. See Rodriguez Diaz, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)). Essentially, when a noncitizen is arrested, they can secure their freedom by showing that they are neither dangerous nor a flight risk; insofar as the arresting officer agrees, "[t]he [noncitizen] will be released." Id. (citing § 236.1(c)(8)). Overall, the warrant requirement, the initial custody determination, and the full constellation of procedural safeguards embedded into § 1226(a) serve as powerful bulwarks against the arbitrary, erroneous, and unconstitutional deprivation of liberty. See Rodriguez Diaz, 53 F.4th at 1209. And, most importantly, they are *mandatory* under federal law. See Backcountry Against Dumps v. Fed. Aviation Admin., 77 F.4th 1260, 1267 (9th Cir. 2023) ("A federal agency . . . is obliged to abide by the regulations it promulgates.") (citations and quotation marks omitted).

Respondents have failed to submit any evidence that they followed their own regulations. They have presented no evidence which demonstrates that ICE obtained a warrant, or conducted an initial custody determination, for Mr. Sanchez Sandoval, even though this Court explicitly ordered them to do so. See Order Appointing Counsel 2–3, ECF No. 4 (May 7, 2026). Since these procedures set forth the lawful process by which ICE may arrest and detain someone, and seeing that they were not followed here, it necessarily follows—and the Court finds—that Petitioner's arrest and detention are—and have been—unlawful from the moment of his arrest.

The Court rejects Respondents' attempt to rely upon a bond order that occurred *after* his unlawful arrest to justify his continued detention. Since Petitioner's initial arrest and continued

---

[2] While the INA provides certain exceptions for warrantless arrests, these exceptions are narrow, limited, and irrelevant to this case, as the government does not invoke them. See Djiwaje, 2026 WL 926753, at *2 (citing 8 U.S.C. § 1357).

detention without appropriate procedures was unlawful (and in violation of the Court's declaratory judgement as to the class), the subsequent bond hearing did nothing to address this unlawful conduct. See generally Bond Order.[3] Respondents cannot cure these violations by conducting a *post-hoc* bond hearing, as the warrant requirement and the initial custody determination are designed to establish a lawful basis for detention in the first instance—a legal prerequisite not addressed by the immigration court in its bond order. The Court will not bless Respondents' "detain first, justify later" approach to peoples' liberty, which eviscerates § 1226(a)' regulatory framework. Put differently, "ordering a bond here 'would effectively allow the [g]overnment to transform an unlawful detention into a lawful one through *post-hoc* justifications.'" Melendez Paz v. Mullin, No. 2:26-cv-00296-RFB-MDC, 2026 WL 1194944, at *7 (D. Nev. May 1, 2026) (quoting Zheng v. Rokosky, No. 26-cv-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026)). Therefore, the Court concludes that Mr. Sanchez Sandoval must be immediately released from government custody as this is what "law and justice" require. See 28 U.S.C. § 2243.

### III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** the Amended Petition for Writ of Habeas Corpus (ECF No. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** Petitioner's Motion to Expedite (ECF No. 16) is **DENIED** as moot.

**IT IS FURTHER ORDERED** Respondents must **IMMEDIATELY RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE**. Respondents are **ENJOINED** from imposing any constraints on Petitioner's liberty unless, and until, they properly detain him pursuant to § 1226(a), its implementing regulations, and the United States Constitution.

---

[3] To be clear, the Court expresses no opinion on the constitutional adequacy of the bond order or Petitioner's due process claim more broadly. That said, the Court notes that this very short bond order raises grave constitutional concerns because it fails to provide any reasoning. See Bond Order at 1 (declining to release Petitioner on bond because "[n]o jurisdiction and a DUI arrest."); see also Su Hwa She v. Holder, 629 F.3d 958, 963 (9th Cir. 2010), superseded by statute on other grounds as stated in Ferrer-Rodriguez v. Blanche, No. 25-1161, 2026 WL 1093348, at *2 n.3 (9th Cir. Apr. 22, 2026) ("Due Process and this court's precedent require a minimum degree of clarity in dispositive reasoning . . . .") (citations omitted); see also Sagaydak v. Gonzalez, 405 F.3d 1035, 1040 (9th Cir. 2005) ("Immigration judges, although given significant discretion, cannot reach their decisions capriciously and must indicate how [they] weighed the factors involved and how [they] arrived at [their] conclusion.") (alterations in original) (citations and internal quotation marks omitted).

**Respondents must release Petitioner between 1:00 p.m. and 3:00 p.m. on June 24, 2026, to comply with this Order.**

**IT IS FURTHER ORDERED** that, upon Petitioner's release, Respondents must **RETURN** his personal property, including, but not limited to, his personal identification document(s), employment authorization form(s), *etc*.

**IT IS FURTHER ORDERED** Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** the Parties shall file a joint status report by **June 26, 2026**, which confirms the date, and time, of Petitioner's release from detention. The status report must also confirm Respondents' compliance with this Court's directives regarding the conditions of his release.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** June 23, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**

- 7 -